MJ-06-307

*In re: Criminal Complaint*
*Kenneth John Freeman*

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

**AFFIDAVIT**

DEC 15 2006

JAMES R. LARSEN, CLERK
_____DEPUTY
SPOKANE, WASHINGTON

STATE OF WASHINGTON )
                     :ss
County of Spokane    )

Sara C. Bay, being first duly sworn on oath, deposes and states:

1.      I am a Special Agent (SA) with U.S. Immigration and Customs

Enforcement (ICE) assigned to the Office of Investigations, Spokane, Washington.

I have been employed as an ICE Special Agent since March 1, 2003.  Prior o

transitioning to ICE, I was employed as a Special Agent for the United States

Customs Service (USCS) from March 2002.  Previously, I was employed as a

Special Investigator for U.S. Investigations Services for approximately twenty-two

(22) months.  I have a Bachelor's degree in Anthropology from Princeton

University and a Master's degree in Criminal Justice from John Jay College of

Criminal Justice.  I have completed both the United States Department of Treasury

Criminal Investigator Training Program and the United States Customs Basic

Enforcement School at the Federal Law Enforcement Training Center.

Affidavit of Sara C. Bay
1 of 25
P61214DD.REE.wpd

2. My duties with ICE include the investigation of criminal activ ties involving, among other things, violations of the Substantive Customs Laws 18 U.S.C. §§ 2251-2255, which deal with the exploitation of children, issues pertaining to child pornography and sexually explicit materials and the assc ciated penalties. My training in the area of child pornography investigation incluc es completion of the basic course from the Federal Law Enforcement Training Center as well as a two-week advanced course on cyber crimes investigations. I have also directly participated in over 50 child pornography investigations since bein;; assigned to the Spokane office. I have consulted other experienced agents i ן the area of child pornography investigations, inclusive of reviewing evidence s( ized and analyzing images deemed to be child pornography. The statements bel(w are based on my education, training and experience, and my review of documer ts and information gained from this investigation.

## PURPOSE

This factual affidavit is in support of an application for an arrest warrant for Kenneth John FREEMAN.

Because this affidavit is being provided for the limited purpose of establishing probable cause, it does not contain each and every fact known t ) your

Affidavit of Sara C. Bay
2 of 25
P61214DD.REE.wpd

affiant regarding this investigation.

## THE INTERNET AND DEFINITIONS OF TECHNICAL TERMS PERTAINING TO COMPUTERS

1.      As part of my training, I have become familiar with the Internet (also commonly known as the World Wide Web), which is a global network of computers[1] and other electronic devices that communicate with each other using various means, including standard telephone lines, high-speed telecommunications links (e.g., copper and fiber optic cable), and wireless transmissions including satellite. Due to the structure of the Internet, connections between computers on the Internet routinely cross state and international borders, even when the computers communicating with each other are in the same state. Individuals and entities use the Internet to gain access to a wide variety of information; to send information to, and receive information from, other individuals; to conduct commercial transactions; and to communicate via electronic mail ("e-mail") An individual who wants to use Internet e-mail must first obtain an account with a

---

[1] **Computer**: The term "computer" is defined by 18 U.S.C. § 1030(e)(1) to mean "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device."

Affidavit of Sara C. Bay
3 of 25

computer that is linked to the Internet – for example, through a university, an

employer, or a commercial service – which is called an "Internet Service Provider"

or "ISP" (see definition of "Internet Service Provider" below).  Once the

individual has accessed the Internet, that individual can use Internet mail services,

including sending and receiving e-mail.  In addition, the individual can visit

websites (see definition of "websites" below), and make purchases from them.

  2.  Set forth below are some definitions of technical terms, used

throughout this Affidavit, and in Attachments A and B hereto, pertaining to the

Internet and computers more generally.

  **Client/Server Computing**:  Computers on the Internet are identified by the

type of function they perform.  A computer that provides resources for other

computers on the Internet is known as a **server**.  Servers are known by the

types of service they provide, that is how they are configured.  For example,

a **web server** is a machine that is configured to provide web pages to other

computers requesting them.  An **e-mail server** is a computer that is

configured to send and receive electronic mail from other computers on the

internet.  A **client computer** is a computer on the Internet that is configured

to request information from a server configured to perform a particular

function.  For example, if a computer is configured to browse web pages and has web page browsing software installed, it is considered a **web client**.

**Computer system and related peripherals, and computer media**: As used in this affidavit, the terms "computer system and related peripherals, and computer media" refer to tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drives and other computer-related operation equipment, digital cameras, scanners, in addition to computer photographs, Graphic Interchange formats and/or photographs, and other visual depictions of such Graphic Interchange formats, including, but not limited to, JPG, GIF, TIF, AVI, and MPEG.

**Domain Name**:  Domain names are common, easy to remember names associated with an Internet Protocol address (defined below).  For example, a domain name of "www.usdoj.gov" refers to the Internet Protocol address of 149.101.1.32.  Domain names are typically strings of alphanumeric characters, with each level delimited by a period.  Each level, read

backwards – from right to left – further identifies parts of an organization.
Examples of first level, or top-level domains are typically .com for
commercial organizations, .gov for the United States government, .org for
organizations, and, .edu for educational organizations.  Second level names
will further identify the organization, for example usdoj.gov further
identifies the United States governmental agency to be the Department of
Justice.  Additional levels may exist as needed until each machine is
uniquely identifiable.  For example, www.usdoj.gov identifies the world
wide web server located at the United States Department of Justice, which is
part of the United States government.

**Internet Service Providers (ISPs) and the Storage of ISP Records**

Internet Service Providers are commercial organizations that are in business
to provide individuals and businesses access to the internet.  ISPs provide a
range of functions for their customers including access to the Internet  web
hosting, e-mail, remote storage, and co-location of computers and other
communications equipment.  ISPs can offer a range of options in providing
access to the Internet including telephone based dial-up, broadband based
access via digital subscriber line (DSL) or cable television, dedicated

circuits, or satellite based subscription.  ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth, that the connection supports.  Many ISPs assign each subscriber an account name – a user name or screen name, an "e-mail address," an e-mail mailbox, and a personal password selected by the subscriber.  By using a computer equipped with a telephone or cable modem, the subscriber can establish communication with an ISP over a telephone line or through a cable system, and can access the Internet by using his or her account name and personal password.  ISPs maintain records ("**ISP records**") pertaining to their subscribers (regardless of whether those subscribers are individuals or entities).  These records may include account application information, subscriber and billing information, account access information (often times in the form of log files), e-mail communications, information concerning content uploaded and/or stored on or via the ISP's servers, and other information, which may be stored both in computer data format and in written or printed record format.  ISPs reserve and/or maintain computer disk storage space on their computer system for their subscribers' use.  This service by ISPs allows for both temporary and long-term storage of

Affidavit of Sara C. Bay
7 of 25

electronic communications and many other types of electronic data and files.  Typically, e-mail that has not been opened by an ISP customer is stored temporarily by an ISP incident to the transmission of that e-mail to the intended recipient, usually within an area known as the home directory. Such temporary, incidental storage is defined by statute as "**electronic storage,**" see 18 U.S.C. § 2510(17), and the provider of such a service is an "**electronic communications service.** " An "**electronic communications service,**" as defined by statute, is "any service which provides to users thereof the ability to send or receive wire or electronic communications.  18 U.S.C. § 2510(15).  A service provider that is available to the public and provides storage facilities after an electronic communication has been transmitted and opened by the recipient, or provides other long term storage services to the public for electronic data and files, is defined by statute as providing a "**remote computing service.**"  18 U.S.C. § 2711(2).

**Internet Protocol Address (IP Address):** Every computer or device on the Internet is referenced by a unique Internet Protocol address the same way every telephone has a unique telephone number. An IP address is a series of four numbers separated by a period, and each number is a whole number

between 0 and 254. An example of an IP address is 192.168.10.102. Each time an individual accesses the Internet, the computer from which that individual initiates access is assigned an IP address. A central authority provides each ISP a limited block of IP addresses for use by that ISP s customers or subscribers. Most ISP's employ **dynamic IP** addressing, that is they allocate any unused IP address at the time of initiation of an Internet session each time a customer or subscriber accesses the Internet. A **dynamic IP address** is reserved by an ISP to be shared among a group of computers over a period of time. The ISP logs the date, time and duration of the Internet session for each IP address and can identify the user of that IP address for such a session from these records. Typically, users who sporadically access the Internet via a dial-up modem will be assigned an IP address from a pool of IP addresses for the duration of each dial-up session. Once the session ends, the IP address is available for the next dial-up customer. On the other hand, some ISP's, including most cable providers, employ **static IP** addressing, that is a customer or subscriber's computer is assigned one IP address that is used to identify each and every Internet session initiated through that computer. In other words, a **static IP address**

Affidavit of Sara C. Bay
9 of 25
P61214DD.REE.wpd

is an IP address that does not change over a period of time and is typically assigned to a specific computer.

**Log File**: Log files are records automatically produced by computer programs to document electronic events that occur on computers. Computer programs can record a wide range of events including remote access, file transfers, logon/logoff times, and system errors. Logs are often named based on the types of information they contain. For example, web logs contain specific information about when a website was accessed by remote computers; access logs list specific information about when a computer was accessed from a remote location; and file transfer logs list detailed information concerning files that are remotely transferred.

**Modem**: A modem is an electronic device that allows one computer to communicate with another.

**Trace Route**: A trace route is an Internet debugging tool used to document the list of inter-connected computers between two computers on the Internet. A trace route will list the names and IP addresses of computers that provide the physical link between two computers on the Internet. Trace routes are useful tools to help geographically identify where a computer on

Affidavit of Sara C. Bay
10 of 25
P61214DD.REE.wpd

the Internet is physically located, and usually includes information about the registered owner of computers on the Internet.

**Website**: A website consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from the web servers to various web clients via Hyper-Text Transport Protocol (HTTP).

**Website Hosting**: Website hosting provides the equipment and services required to host and maintain files for one or more websites and to provide rapid Internet connections to those websites. Most hosting is "shared" which means that multiple websites of unrelated companies are on the same server in order to reduce associated costs. When a client develops a website, the client needs a server and perhaps a web hosting company to host it. **"Dedicated hosting"** means that the web hosting company provides all of the equipment and assumes all of the responsibility for technical support and maintenance of a website. **"Co-location"** means a server is located at a dedicated hosting facility designed with special resources such as a secure cage, regulated power, a dedicated Internet connection, on line

security and online technical support.  Co-location facilities offer customers

a secure place to physically house their hardware and equipment as opposed

to keeping it in their offices or warehouse, where the potential for fire, theft

or vandalism is greater.

## COMPUTERS AND CHILD PORNOGRAPHY

1.      Based upon my knowledge, training, and experience in child

exploitation and child pornography investigations, and the experience and

training of other law enforcement officers with whom I have had discussions,

computers and computer technology have revolutionized the way in which child

pornography is produced, distributed and utilized.  Prior to the advent of

computers and the Internet, child pornography was produced using cameras and

film, resulting in either still photographs or movies.  The photographs required

darkroom facilities and a significant amount of skill in order to develop and

reproduce the images.  As a result, there were definable costs involved with the

production of pornographic images.  To distribute these images on any scale also

required significant resources.  The photographs themselves were somewhat bulky

and required secure storage to prevent their exposure to the public.  The

distribution of these wares was accomplished through a combination of personal

contacts, mailings, and telephone calls, and compensation for these wares would

follow the same paths.  More recently, through the use of computers and the

Internet, distributors of child pornography use membership-based/subscription-

based websites to conduct business, allowing them to remain relatively

anonymous.

    2.    In addition, based upon my own knowledge, training, and experience

in child exploitation and child pornography investigations, and the experience and

training of other law enforcement officers with whom I have had discussions, the

development of computers has also revolutionized the way in which child

pornography collectors interact with, and sexually exploit, children.  Computers

serve four basic functions in connection with child pornography: production,

communication, distribution, and storage. More specifically, the development of

computers has changed the methods used by child pornography collectors in these

ways:

    a.    Producers of child pornography can now produce both still and

    moving images directly from a common video or digital camera.  The

    camera is attached, using a device such as a cable, or digital images are

    often uploaded from the camera's memory card, directly to the computer.

Affidavit of Sara C. Bay
13 of 25
P61214DD.REE.wpd

Images can then be stored, manipulated, transferred, or printed direc ly from the computer. Images can be edited in ways similar to how a photograph may be altered. Images can be lightened, darkened, cropped, or othe wise manipulated. The producers of child pornography can also use a de ice known as a scanner to transfer photographs into a computer-readable format. As a result of this technology, it is relatively inexpensive an i technically easy to produce, store, and distribute child pornography. In addition, there is an added benefit to the pornographer in that this method of production does not leave as large a trail for law enforcement to follc w.

b.      The Internet allows any computer to connect to another compu ter. By connecting to a host computer, electronic contact can be made to lite ally millions of computers around the world. A host computer is one that is attached to a network and serves many users. Host computers are sometimes operated by commercial ISPs, such as America Online ("\OL") and Microsoft, which allow subscribers to dial a local number and co mect to a network which is, in turn, connected to the host systems. Host computers, including ISPs, allow e-mail service between subscribers and sometimes between their own subscribers and those of other network ;. In

Affidavit of Sara C. Bay
14 of 25
P61214DD.REE.wpd

addition, these service providers act as a gateway for their subscribers to the Internet or the World Wide Web.

c.    The Internet allows users, while still maintaining anonymity, to easily locate (I) other individuals with similar interests in child pornography; and (ii) websites that offer images of child pornography.  Child pornography collectors can use standard Internet connections, such as those provided by businesses, universities, and government agencies, to communicate with each other and to distribute child pornography.  These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous as desired.  All of these advantages, which promote anonymity for both the distributor and recipient, are well known and are the foundation of transactions between child pornography collectors over the Internet. Sometimes the only way to identify both parties and verify the transportation of child pornography over the Internet is to examine the recipient's computer, including the Internet history and cache[2] to look for

---

[2]"Cache" refers to text, image and graphic files sent to and temporarily stored by a user's computer from a web site accessed by the user in order to allow the user speedier access to and interaction with that web site.

Affidavit of Sara C. Bay
15 of 25
P61214DD.REE.wpd

"footprints" of the websites and images accessed by the recipient.

d.     The computer's capability to store images in digital form makes it an ideal repository for child pornography.  A single floppy disk can store dozens of images and hundreds of pages of text.  The size of the electronic storage media (commonly referred to as a hard drive) used in home computers has grown tremendously within the last several years.  Hard drives with the capacity of 40 gigabytes are not uncommon.  These drives can store thousands of images at very high resolution.  Magnetic storage located in host computers adds another dimension to the equation.  It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and save that image to storage in another country.  Once this is done, there is no readily apparent evidence at the "scene of the crime".  Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

Affidavit of Sara C. Bay
16 of 25
P61214DD.REE.wpd

# APPLICABLE LAWS

1.      18 U.S.C. § 2251:

"(a) Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist and other person to engage in, or who transports any minor in interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

(b) Any parent, legal guardian, or person having custody or control of a minor who knowingly permits such minor to engage in, or to assist any other person to engage in, sexually explicit conduct for the purpose of producing any visual depiction of such conduct shall be punished as provided under subsection

(e) of this section, if such parent, legal guardian, or person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

- - - - - -

(e) Any individual who violates, or attempts or conspires to violate, this section shall be fined under this title and imprisoned not less than 15 years nor more than 30 years."

2.      18 U.S.C. § 2256 defines the following terms:

(1)     "minor" means any person under the age of eighteen years;

(2)     "sexually explicit conduct" means actual or simulated—

(A)     sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

(B)     bestiality;

(C)     masturbation;

(D)    sadistic or masochistic abuse; or

(E)    lascivious exhibition of the genitals or pubic area of any person;

(5) "visual depiction" includes undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image;

(8) "child pornography" means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where—

1.    the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;

2.    such visual depiction is, or appears to be, or a minor engaging in sexually explicit conduct;

3.    such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct; or

4.    such visual depiction is advertised, promoted, presented, described, or distributed in such a manner that conveys the impression that the

Affidavit of Sara C. Bay
19 of 25
P61214DD.REE.wpd

material is or contains a visual depiction of a minor engaging in sexually explicit conduct.

## INVESTIGATION

1.     In November 2005, Kenneth John FREEMAN was charged with Rape of a Child in the 1st degree in the Superior Court, Benton County, Washington. The child FREEMAN allegedly raped was his daughter, K.F.  (DOB: 10/14/1989). FREEMAN was initially charged in November 2005 and was released on bond pending trial.

2.     In February 2006, K.F. made additional disclosures about the abuse by FREEMAN.  According to K.F., FREEMAN videotaped some of the abusive incidents.

3.     In March 2006, a bail review hearing was scheduled for FREEMAN but he failed to appear.  A warrant was issued for FREEMAN and it is currently outstanding.

4.     In December 2006, an episode of America's Most Wanted aired in which the FREEMAN case was profiled.  Based on the episode, information was received that potentially identified K.F. as being a victim of a series of online

child pornography videos and images that have been widely distributed around the world.

5.    On December 11, 2006, your affiant interviewed K.F. at her home in Kennewick, Washington.  During the interview, K.F. stated that FREEMAN began to sexually abuse her during the Mother's Day weekend in 2000.  The sexual abuse continued until approximately July 2001.  K.F. stated that on different occasions, FREEMAN videotaped the sexual abuse.  FREEMAN videotaped the sexual abuse with either a Sony handheld video camera or an alarm clock hidden camera.  K.F. learned about the alarm clock camera when she saw FREEMAN watching a video of him abusing her on his computer.  K.F. asked FREEMAN where the video came from and he told her about the alarm clock camera.  K.F. remembers all of the videotaped incidents occurring in FREEMAN'S house located at 106 Canyon Road, Richland, Washington.  The incidents occurred in FREEMAN'S bedroom and K.F. was able to draw a sketch of the bedroom and indicate the different locations where the video cameras would be placed.

6.    K.F. also provided information regarding FREEMAN and his personal computer.  According to K.F., FREEMAN had a homemade desktop computer that was located in a separate computer room in the Richland house.

The computer was connected to the Internet via a wireless modem connection. In order to access the computer, FREEMAN needed to enter a password. FREEMAN had both adult and child pornography on his computer and would sometimes show it to K.F.. K.F. does not remember how the pornography was organized, however, she knew that FREEMAN had it organized in some manner. In order to access the pornography, an additional password had to be entered.

7.      According to K.F., FREEMAN told her that he was in contact with a man who used the online screen name "kiwiman". FREEMAN told K.F. that kiwiman had a daughter who he was sexually abusing that was younger than K.F.. FREEMAN also told K.F. that he and kiwiman were sharing the videos of the sexual abuse with their daughters. FREEMAN told K.F. that kiwiman was located in Canada.

8.      FREEMAN had given K.F. a computer when she was in 7th grade. FREEMAN told K.F. that the computer had the same hard drive that was in his computer but that he had rebuilt other parts of the computer. In February 2006, when she was working on a school project, K.F. opened a program that contained file names with sexual references. K.F. was unable to open the files but her family notified the Richland Police Department of the incident. The computer was

subsequently turned over to the police on consent for a forensic review of the computer.

9.    The forensic review, conducted in February 2006, found several video and image files that depict child pornography. Two video files in particular, AVI 32 and AVI 34 were found that depict child pornography. The AVI 32 video was shown to both K.F.'s mother to her stepfather. Both stated that the female in the video was K.F.. The mother also identified FREEMAN as being the male in the video. The identification of FREEMAN was made solely on the genitals and the hands. The mother was also shown the video file AVI 34. The mother identified the female as being K.F. and the male as being FREEMAN. This identification was made solely on the female's lower torso and the male's hands and arms.

10.    Your affiant has viewed both file AVI 32 and AVI 34. AVI 32 shows a minor female who is clothed and an adult male who is naked. During the video clip the female child is shown masturbating the adult male. AVI 34 appears to show the same minor female who is naked. The adult male's hand is shown touching the child's vagina.

Affidavit of Sara C. Bay
23 of 25
P61214DD.REE.wpd

11.    During 2005 and 2006, ICE agents conducted an investigation of a

distributor of child pornography which had servers located in Virginia, Florida

and New Jersey. That investigation resulted in the prosecution of both the

distributor and several individuals who had downloaded child pornography from

those servers. One of those prosecutions was conducted in the Western District of

Washington. Part of the basis for that prosecution included the downloading of

video files previously identified as being part of the "Vicky" series, who is now

known to be K.F. The forensic examination of the computers involved shows that

those video files were down loaded on January 17, 2006. That file download

occurred between servers located in Virginia and the recipients computer located

in Puyallup, Washington.

## CONCLUSION

1.    The National Center for Missing and Exploited Children (NCMEC)

maintains a database of known child pornography victims. One of the known

series of child pornography videos and images is of a female victim that fits the

description of K.F. and has been entitled "Vicki". This series of child

pornography has been seen in criminal investigations conducted around the world.

Based on information provided by NCMEC, other investigators familiar with this

series of child pornography and information known first-hand by your affiant

through investigations I have personally conducted, I believe that the series of

child pornography known as "Vicki" depicts K.F. I also believe that Kenneth

FREEMAN is the individual who produced this series of child pornography.

2.    Based on the information provided in this affidavit, I believe that

there is probable cause to believe that Kenneth John FREEMAN is the individual

who produced child pornography with the intent to distribute it in interstate

commerce by use of a computer, in violation of Title 18 United States Code,

Section 2251.  Furthermore, I believe that the production of the child pornography

occurred in the Eastern District of Washington.

3.    Based on the statements provided in this affidavit, I respectfully

request a warrant for arrest be issued for Kenneth John FREEMAN.

Sara C. Bay, Special Agent
Bureau of Immigration and Customs Enforcement


SUBSCRIBED AND SWORN to before me this ___15th___ day of December,
2006.

Cynthia Imbrogno
United States Magistrate Judge


Affidavit of Sara C. Bay
25 of 25
P61214DD.REE.wpd